100 P.3d 595

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Maurice W. WALKER, also known as Ahyani Joga, Defendant–Appellee.**

No. 26299.

Supreme Court of Hawai'i.

Nov. 4, 2004.

Daniel H. Shimizu, deputy prosecuting attorney, on the briefs, for plaintiff-appellant State of Hawai'i.

Phyllis J. Hironaka, deputy public defender, on the briefs, for defendant-appellee Maurice W. Walker, also known as Ahyani Joga.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by LEVINSON, J.

The plaintiff-appellant State of Hawai'i [hereinafter, "the prosecution"] appeals from the judgment, guilty conviction, probation sentence, and mittimus of the first circuit court, the Honorable Karl K. Sakamoto presiding, filed on December 2, 2003, convicting the defendant-appellee Maurice W. Walker of and sentencing him for the following offenses: (1) promoting a dangerous drug in the third degree, in violation of Hawaii Revised Statutes (HRS) § 712–1243 (1993 & Supp.2003)[1] (Count I); (2) unlawful use of drug paraphernalia, in violation of HRS § 329–43.5(a) (1993)[2] (Count II); and (3) terroristic threatening in the second degree, in violation of HRS § 707–717(1) (1993)[3] (Count III). The prosecution contends that the circuit court erred (1) in denying the prosecution's motion to sentence Walker to a mandatory minimum term of imprisonment as a repeat offender, in accordance with HRS § 706–606.5 (1993 & Supp.2003),[4] and (2) in

1. HRS § 712–1243 provides:

> **Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
> (2) Promoting a dangerous drug in the third degree is a class C felony.
> (3) Notwithstanding any law to the contrary, except for first-time offenders sentenced under section 706–622.5, if the commission of the offense of promoting a dangerous drug in the third degree under this section involved the possession or distribution of methamphetamine, the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment, the length of which shall be not less than thirty days and not greater than two-and-a-half years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory period of imprisonment.

2. HRS § 329–43.5(a) provides:

> **Prohibited acts related to drug paraphernalia.** (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

3. HRS § 707–717 provides:

> **Terroristic threatening in the second degree.** (1) A person commits the offense of terroristic threatening in the second degree if the person commits terroristic threatening other than as provided in section 707–716.

> (2) Terroristic threatening in the second degree is a misdemeanor.

HRS § 707–716 provides:

> **Terroristic threatening in the first degree.** (1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:
> (a) By threatening another person on more than one occasion for the same or a similar purpose; or
> (b) By threats made in a common scheme against different persons; or
> (c) Against a public servant, including but not limited to an educational worker, who for the purposes of this section shall mean an administrator, specialist, counselor, teacher, or other employee of the department of education, or a volunteer as defined by section 90–1, in a school program, activity, or function that is established, sanctioned, or approved by the department of education, or a person hired by the department of education on a contractual basis and engaged in carrying out an educational function; or
> (d) With the use of a dangerous instrument.
> (2) Terroristic threatening in the first degree is a class C felony.

4. HRS § 706–606.5 provides in relevant part:

> **Sentencing of repeat offenders.** (1) Notwithstanding section 706–669 and any other law to the contrary, any person convicted of ... any of the following class C felonies: section ... 708–831 relating to theft in the second degree; ... 712–1243 relating to promoting a dangerous drug in the third degree[,] ... and who has a prior conviction ... for ... any of the class C felony offenses enumerated above, ... shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:
> (a) One prior felony conviction:
> ....
> (iv) Where the instant conviction is for a class C felony offense enumerated above-one year, eight months;

sentencing Walker to an illegal sentence of probation, pursuant to HRS § 706–622.5

. . . .

(2) Except as in subsection (3), a person shall not be sentenced to a mandatory minimum period of imprisonment under this section unless the instant felony offense was committed during such period as follows:

. . . .

(e) Within five years after a prior felony conviction where the prior felony conviction was for a class C felony offense enumerated above; ·

. . . .

(7) For purposes of this section:

. . . .

(c) A conviction occurs on the date judgment is entered.

5. HRS § 706–622.5 provides:

**Sentencing for first-time drug offenders; expungement.** (1) Notwithstanding any penalty or sentencing provision under part IV of chapter 712, a person convicted for the first time for any offense under part IV of chapter 712 involving possession or use, not including to distribute or manufacture as defined in section 712–1240, of any dangerous drug, detrimental drug, harmful drug, intoxicating compound, marijuana, or marijuana concentrate, as defined in section 712–1240, or involving possession or use of drug paraphernalia under section 329–43.5, who is nonviolent, as determined by the court after reviewing the:

(a) Criminal history of the defendant;

(b) Factual circumstances of the offense for which the defendant is being sentenced; and

(c) Other information deemed relevant by the court; shall be sentenced in accordance with subsection (2); provided that the person does not have a conviction for any violent felony for five years immediately preceding the date of the commission of the offense for which the defendant is being sentenced.

(2) A person eligible under subsection (1) shall be sentenced to probation to undergo and complete a drug treatment program. If the person fails to complete the drug treatment program and if no other suitable treatment is amenable to the offender, the person shall be returned to court and subject to sentencing under the applicable section under this part. As a condition of probation under this subsection, the court shall require an assessment as to the treatment needs of the defendant, conducted by a person certified by the department of health to conduct the assessments. The drug treatment program for the defendant shall be based upon the assessment. The court may require the person to contribute to the cost of the drug treatment program.

(3) For the purposes of this section, "drug treatment program" means drug or substance abuse services provided outside a correctional facility, but the services do not require the expenditure of state moneys beyond the limits of available appropriations.

(Supp.2003).[5] In the points of error set forth

(4) The court, upon written application from a person sentenced under this part, shall issue a court order to expunge the record of arrest for that particular conviction; provided that a person shall be eligible for one time only for expungement under this subsection.

(5) Nothing in this section shall be construed to give rise to a cause of action against the State, state employee, or treatment provider.

It is noteworthy that the legislature, the circuit court, and the parties frequently refer to the foregoing version of HRS § 706–622.5 as "Act 161."

Effective July 1, 2004, and in response to *State v. Smith*, 103 Hawai'i 228, 81 P.3d 408 (2003), the legislature amended HRS § 706–622.5 in relevant part as follows:

(1) [Notwithstanding any penalty or sentencing provision under part IV of chapter 712,] Notwithstanding section 706–620(3),. . . .

. . . .

(2) A person eligible under subsection (1) [shall] may be sentenced to probation to undergo and complete a [drug] *substance abuse* treatment program[.] *if the court determines that the person can benefit from substance abuse treatment and, notwithstanding that the person would be subject to sentencing as a repeat offender under section 706–606.5, the person should not be incarcerated in order to protect the public.* . . .

2004 Haw. Sess. L. Act 44, pt. II, § 11 at 214–15 (deletions denoted by strikethrough and additions denoted by underlining). HRS § 706–620(3) (Supp.2003) provides in relevant part that "[a] defendant who has been convicted of a crime may be sentenced to a term of probation unless . . . [t]he defendant is a repeat offender under section 706–606.5[.]"

The legislature explained the "Act 44" amendments as follows:

The legislature passed Act 161, Session Laws of Hawaii 2002, (Act 161) intending to divert first-time nonviolent drug offenders to drug treatment instead of prison. During the past year, approximately two hundred fifty offenders were identified as eligible for diversion to treatment. Fewer than half of these offenders actually began treatment, with the remaining offenders returning to prison, completing their probation or parole terms, or being subject to other legal action.

Since its passage, local and state prosecutors have complained about the law, claiming that it is a "get out of jail free card" for offenders and that it has taken away discretion ordinarily reserved to the court. (*See*, "Final Report of the Task Force," pp. 75–78 for a complete discussion of the controversy relating to Act 161.) The original language of Act 161 caused confusion over whether the mandatory requirement to sentence a first-time drug offend-

in its opening brief, the prosecution challenges the circuit court's December 5, 2003 findings of fact (FOFs), conclusions of law (COLs), and order denying its motion for sentencing of repeat offender, specifically FOF No. 4 and COL Nos. 1, 5, 7, and 9 through 20.

Walker counters (1) that the circuit court "properly applied the rules of statutory construction in denying the [prosecution's] motion for sentencing of repeat offender and sentencing Walker to probation, including mandatory drug treatment, under HRS § 706–622.5" and (2) that Act 44, part II, §§ 9 and 11, *see supra* note 5, "lend[ ] support for [his] argument that the [circuit] court's application of HRS § 706–622.5 was correct, and hence the COLs and [o]rder were likewise proper."

The prosecution replies (1) that "the plain and unambiguous language of [HRS § 706–606.5] required the circuit court to sentence [Walker] as a repeat offender" and (2) that "Act 44 . . . does not support [Walker's] argument that the [circuit] court properly sentenced [him] to probation."

On the record before us, we reiterate our holding in *State v. Smith*, 103 Hawai'i 228, 81 P.3d 408 (2003). We further hold that Act 44 does not alter the holding in *Smith* and, therefore, pursuant to Act 44, part II, §§ 29 and 33, *see supra* note 5, HRS § 706–606.5 trumps HRS § 706–622.5 with respect to all cases involving "rights and duties that matured, penalties that were incurred, and pro-

ceedings that were begun, before [the] effective date [of Act 44]," *i.e.*, July 1, 2004. Accordingly, we (1) vacate the circuit court's December 2, 2003 judgment, guilty conviction, probation sentence, and mittimus and (2) remand this matter to the circuit court for resentencing pursuant to this opinion.

## I. *BACKGROUND*

On May 5, 2003, the prosecution charged Walker by complaint with the following offenses: (1) promoting a dangerous drug in the third degree, in violation of HRS § 712–1243, *see supra* note 1 (Count I); (2) unlawful use of drug paraphernalia, in violation of HRS § 329–43.5(a), *see supra* note 2 (Count II); and (3) terroristic threatening in the second degree, in violation of HRS § 707–717(1), *see supra* note 3 (Count III). On September 3, 2003, Walker entered a no contest plea with respect to the foregoing charges. On October 15, 2003, the prosecution filed a motion for sentencing of repeat offender, pursuant to HRS § 706–606.5, *see supra* note 4.[6] In its motion, the prosecution argued that Walker should be sentenced to a mandatory minimum prison term of one year and eight months, without the possibility of parole. The prosecution explained the motion as follows:

> a. On or about December 2, 2003, [Walker] will be convicted of the offenses of Promoting a Dangerous Drug in the Third Degree, Unlawful Use of

er to probation took precedence over the repeat offender sentencing laws. Recently, the Hawaii Supreme Court ruled in *State of Hawaii v. Smith*, 103 Hawai'i 228, 81 P.3d 408 (2003), that the repeat offender sentencing laws took precedence over the mandatory requirement to sentence a first-time drug offender to probation.

*The Task Force recommended that Act 161 should be amended to* clear up the confusion regarding repeat offenders and the criteria for eligibility for drug treatment, and *permit more discretion by the court in sentencing.* The legislature finds that diversion to drug treatment instead of prison is consistent with the solution to cure the ice epidemic. Accordingly, *the legislature intends that a broader group of nonviolent drug offenders will be eligible for consideration for probation in order to undergo drug treatment.* The purpose of this amendment is *to provide the court with discretion* in sentenc-

ing a first-time nonviolent drug offender to probation regardless of whether the offender has prior convictions. *The legislature strongly urges courts to consider* transferring the most severely addicted offenders or addicted offenders with criminal histories to the jurisdiction of the drug court as a condition of being sentenced to probation.
2004 Haw. Sess. L. Act 44, pt. II, § 9 at 212–13 (emphases added). Act 44 further provides that it "does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date," and that it would take effect on July 1, 2004. 2004 Haw. Sess. L. Act 44, pt. IX, §§ 29 and 33 at 227.

**6.** It appears from the record on appeal that the prosecution filed its memorandum in support of its motion for sentencing of repeat offender on October 14, 2003, one day prior to the prosecution's filing of the motion itself.

Drug Paraphernalia, and Terroristic Threatening in the Second Degree in Criminal No. 03–1–0962.

b. On or about December 19, 2000, [Walker] was convicted of the offense of Theft in the Second Degree, pursuant to [HRS] Section 708–831[,] . . . under Criminal No. 97–2896. If on that date, [Walker] had been sentenced to the maximum term of imprisonment allowed by law for the said offense, the period of such maximum term of imprisonment would not have expired on the date of the offense in the instant case, Criminal No. 03–1–0962. At all relevant times during proceedings, [Walker] was represented by counsel, to wit: [a] Deputy Public Defender. . . .

4. Based on the above, [Walker] is eligible for sentencing as a repeat offender to a mandatory minimum term of one (1) year and eight (8) months imprisonment in Count I.

On December 2, 2003, the circuit court conducted a hearing on the prosecution's motion for sentencing of repeat offender. After hearing arguments from both parties on the respective applicability of HRS § 706–606.5 and HRS § 706–622.5, *see supra* note 5, the circuit court ruled as follows:

THE COURT: The Court looks at the conflict between Act 161[and] the repeat offender [sentencing statute], and finds that the language in Act 161 states that notwithstanding any penalty, which would include also the repeat offender statute, if at best it would be ambiguous, notwithstanding any penalty or sentencing provision under part 4 of [HRS] chapter 712.

Looking at the intent of the Legislature, the Court finds that the intent was to have first time drug offenders treated so that it ends the cycle of criminality that is rampant and which supports their drug habit. And [Walker] appears to satisfy the pre-conditions. He's a first time drug offender. He does not have a violent history of criminality, and does not have a violent felony within the five years previous, and is not a distributor of drugs in this case. And he satisfies the clear, black and white pre-conditions which mandate probation.

. . . .

The Court will sentence [Walker] to five years probation, with . . . special conditions. . . .

On the same date, the circuit court entered its judgment, guilty conviction, and probation sentence, reflecting the circuit court's oral ruling, as well as the mittimus.

On December 5, 2003, the circuit court entered its FOFs, COLs, and order denying the prosecution's motion for sentencing of repeat offender, which recited in relevant part:

### FINDINGS OF FACT

. . . .

4. Defendant is a first-time, nonviolent, drug offender, with no convictions for a violent felony within the previous five years.

### CONCLUSIONS OF LAW

1. Act 161, which relates to sentencing for drugs and intoxicating compound offenses, is broad and its enactment amended Chapters 321[ ] and 706[ ] and Sections 353–66[,] 706–625,[ ], 712–1241,[ ] 712–1242,[ ] and 712–1243[ ] of the [HRS]. It is a unique sentencing statute in that it appears to be the exclusive means of sentencing for those found eligible under [its provisions]. In this regard, Act 161 contains comprehensive sentencing guidelines and considerations for persons eligible under [its provisions]. The Act addresses situations involving persons who have prior records; are on probation; are on parole; or seeking expungement of their criminal records.

. . . .

5. Section 1 of Act 161 . . . states:

Persons charged with repeat offenses, who actively abuse or are addicted to a controlled substance or alcohol and who are not undergoing appropriate treatment and monitoring, pose a proportionately greater risk of criminal recidivism.

It is clear from that language that the Legislature intended to also provide rehabilitative treatment service to persons who were at greatest risk of criminal recidivism and most in need of drug treatment services, those persons charged with repeat offenses.

. . . .

7. There is a plainly irreconcilable conflict between a specific statute, Act 161, and a general statute, the Repeat Offender Statute, [HRS] § 706–606.5. To the extent that Act 161 is in irreconcilable conflict with the Repeat Offender Statute, Act 161 will be favored. *See* [ ] *State v. Batson,* 99 Hawai'i 118, 53 P.3d 257 (2002)[.]

. . . .

9. The language in Act 161 is plain and unambiguous. It reads:

(1) Notwithstanding any penalty or sentencing provision under part IV of chapter 712, a person convicted for the first time for any offense under part IV of chapter 712 involving possession or use, not including to distribute or manufacture as defined in section 712–1240, of any dangerous drug, detrimental drug, harmful drug, intoxicating compound, marijuana, or marijuana concentrate, as defined in section 712–1240, or involving possession or use of drug paraphernalia under section 329–43.5, who is nonviolent, as determined by the court after reviewing the:

(a) Criminal history of the defendant;

(b) Factual circumstances of the offense for which the defendant is being sentenced; and

(c) Other information deemed relevant by the court;

shall be sentenced in accordance with subsection (2); provided that the person does not have a conviction for any violent felony for five years immediately preceding the date of the commission of the offense for which the defendant is being sentenced.

(2) A person eligible under subsection (1) shall be sentenced to probation to undergo and complete a drug treatment program.

[HRS] § 706–622.5 (Supp.2002).

10. Contrary to the position of the [prosecution], the Court reads the language "Notwithstanding *any penalty*" under subsection (1) of Act 161 to include any penalty relating to sentencing under the [HRS], including the Repeat Offender Statute, [HRS] § 706–606.5 (emphasis added). Given this plain and obvious meaning, the Court views Act 161 as superceding the Repeat Offender statute.

11. Section (2) of Act 161 states plainly and unambiguously that "a person eligible under subsection (1) shall be sentenced to probation." The plain and obvious meaning of this provision mandates probation if the prescribed preconditions in subsection (1) are met. Implicitly, drug offenders that are "repeat offenders" are not *per se* excluded from being sentenced to prison. *See* [ ] *State v. Savitz,* 97 Hawai'i 440[,] 443, 39 P.3d 567[,] 571 (2002).[ ] The preconditions for the consideration of probation in Act 161 are narrowly defined and specific:

1. A person convicted for the first time for any offense under part IV of [HRS] chapter 712;

2. A person convicted for the first time for any offense under part IV of chapter 712, but not including to distribute or manufacture as defined in section 712–1240;

3. A person who is non-violent; and

4. A person who does not have a conviction for any violent felony for five years immediately preceding the date of the commission of the offense.

12. There is no language in Act 161 that creates a precondition of probation upon a person not being eligible as a repeat offender under [HRS § ] 706–606.5. The legislature plainly did not intend to impose any other qualification on the court's consideration of probation. Additionally, applying the rule of *"expressio unius est exclusio alterius"*—the statute's inclusion of four exceptions to the allowance of probation necessarily

means that the legislature purposefully omitted other potential limitations on the court's sentencing provision. *See* [ ] *Savitz*, 97 Hawai'i at 447, 39 P.3d at 574 (2002) (dissenting opinion). The legislature could have excluded repeat offenders as it did repeat drug offenders, drug manufacturers and distributors, violent felons sentenced within 5 years, and offenders with a violent history from being eligible under Act 161, but it did not. The fact that it did not do so manifests its intent that it chose not to do so.

13. The plain and unambiguous language of Act 161 directs and restricts the court to take into consideration the defendant's prior criminal history in a specifically prescribed manner. Accordingly, the court is limited in considering a person's prior criminal history to determine whether this is the defendant's first drug offense; whether the defendant has a violent history; and whether the defendant was convicted of a violent felony within the past five years.

14. In considering the meaning of the words in a statute, "[t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." *State v. Dudoit*, 90 Hawai'i 262 at 276, 978 P.2d 700 at 714 (1999) (citing *Kim v. Contractors License Rd.* [*Bd.*], 88 Hawai'i 264 at 270, 965 P.2d 806 at 812 (1996) [(1998)]). It would be absurd to follow the Act's specified use of a person's prior criminal history to grant the mandated probation, then apply a broader[,] more general sentencing scheme under the Repeat Offender statute and sentence a person to an indeterminate term of imprisonment.

15. The Court has recognized the well-established rule regarding statutory construction where "we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." *Savitz*, 97 Haw. at 570 [443], [39] P.3d at 443 [567]. Examining the full context of Act 161 (all of its sections including section 3) also supports the legislative intent to have drug offenders treated. Act 161 is a comprehensive sentencing statute for eligible drug offenders. The Act prescribes treatment in specified circumstances without need for reference to other sentencing statutes. For example, probationers, shall not be revoked for a first violation of the terms and conditions of probation involving possession or use of any dangerous drug, or possession or use of any drug paraphernalia.[ ] Likewise, a parole shall not be revoked for a first violation of the terms and conditions or parole involving possession or use of any dangerous drug, or possession or use of any drug paraphernalia.[ ] Act 161 also allows for expungement of the record of conviction.[ ] Finally, probation under Act 161 is mandated pursuant to its specified prerequisites, and does not encompass further evaluation for eligibility under [HRS § ] 706–621 (relating to factors to be considered in imposing a term of probation).[ ]

16. Even if the language in Act 161 were ambiguous, the legislative history indicates that a person sentenced under Act 161 is not subject to additional sentencing under the repeat Offender statute, [HRS] § 706–606.5. . . .

17. "[T]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning" may also be considered by the court when interpreting statutes. *State v. Sullivan*, 97 Hawai'i 259[,] 262, 36 P.3d 803[,] 806 (1993) [(2001)] (citing [HRS] § 1–15(2) (1993)). In Conference Committee Report No. 96–02 of the Twenty–First State Legislature Regular Session of 2002, it is noted that "[t]he legislature found that the link between substance abuse and crime was well-established; the legislature did not wish to diminish the seriousness of crime, but looked to approaching crime as being the result of addiction that is treatable and the treatment route was expected to produce a reduction in crime and recidivism; and finally, the legislature intended to promote treatment of nonviolent substance abuse offenders, rather than incarceration, as being in the best

interest of the individual and the community at large." The report also states, "[t]he purpose of this measure is to require that **any person** convicted for the first time for a nonviolent offense be sentenced to probation and community service." *Id.* (emphasis added). Any person includes persons who are repeat offenders. In this regard, it is clear that the spirit of Act 161 was to help people who were addicted to drugs including those who were repeat offenders.

18. Repeat offenders who are addicted to drugs were intended to be included in Act 161. The legislative history of Act 161 is persuasive in supporting this. In the original draft and up until its final form, Act 161 did have plain language excluding repeat offenders from receiving probation. The original draft of Act 161 read as follows:

> (b) Not withstanding any other provision of law, and except as provided for in subsection (c), any person convicted of a non-violent drug possession offense shall be sentenced to a term of probation. . . .

> (c) Subsection (b) shall apply **unless:**

> (1) **The defendant is a repeat offender under section 706–606.5** . . . . [ ]

That language of repeat of offender exception remained in the following five Act 161 drafts before being removed in the final form and replaced with limited and specific factors, including a consideration of prior criminal history, for the court to review when determining eligibility for Act 161. In deleting the "repeat offender" language from Act 161, it is inferred that the legislature intended that a repeat offender not be excluded form probation pursuant to Act 161.

19. Based on the above, a defendant eligible for probation under Act 161 is not subject to being further sentenced as a repeat offender under [HRS] § 706–606.5. . . .

20. Accordingly, this court will follow the plain language of Act 161 and is persuaded in finding that Act 161 is applicable to this case and [Walker] is entitled

to probation and drug treatment instead of the mandatory imprisonment imposed under the repeat offender statute.

### ORDER

Based on the reasons stated above, IT IS HEREBY ORDERED that the [prosecution's] Motion for Sentencing of Repeat Offender is DENIED.

(Internal footnotes omitted; emphasis in original.)

On December 24, 2003, the prosecution filed a timely notice of appeal.

## II. *STANDARDS OF REVIEW*

### A. *Statutory Interpretation*

▬ A "cardinal" canon of statutory construction is that this court "cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts." *State v. Dudoit,* 90 Hawai'i 262, 271, 978 P.2d 700, 709 (1999) (quoting *State v. Buch,* 83 Hawai'i 308, 326, 926 P.2d 599, 617 (1996) (Levinson, J., concurring and dissenting) (quoting *State v. Meyer,* 61 Haw. 74, 78, 595 P.2d 288, 291 (1979))). This is because "[w]e do not legislate or make laws." *Dudoit,* 90 Hawai'i at 271, 978 P.2d at 709 (citations omitted). . . . *[S]ee also id.* at 270 n. 8, 978 P.2d at 708 n. 8 ("[A]s Justice Ramil himself [has] aptly observed, as author of this court's opinion in *State v. Richie,* 88 Hawai'i 19, 30, 960 P.2d 1227, 1230 (1998), '[i]t is a cardinal rule of statutory interpretation that, where the terms of a statute are plain,, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning.' " (Citations omitted.) (Some brackets added and some in original.)).

*State v. Haugen,* 104 Hawai'i 71, 75, 85 P.3d 178, 182 (2004) (quoting *State v. Smith,* 103 Hawai'i 228, 233, 81 P.3d 408, 413 (2003) (quoting *State v. Mueller,* 102 Hawai'i 391, 394, 76 P.3d 943, 946 (2003) (quoting *State v. Yamada,* 99 Hawai'i 542, 552–53, 57 P.3d 467, 477–78, *reconsideration denied,* 100 Hawai'i

295, 59 P.3d 930 (2002) (some brackets added and some in original)))).

B. *Findings of Fact and Conclusions of Law*

■ [This Court] review[s] a circuit court's findings of fact in a pretrial ruling according to the following standard:

Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. *State v. Okumura*, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citations and internal quotation marks omitted). "The circuit court's conclusions of law are reviewed under the right/wrong standard." *State v. Pattioay*, 78 Hawai'i 455, 459, 896 P.2d 911, 915 (1995) (citation omitted).

*State v. Naititi*, 104 Hawai'i 224, 232–33, 87 P.3d 893, 901–02 (2004) (quoting *State v. Locquiao*, 100 Hawai'i 195, 203, 58 P.3d 1242, 1250 (2002) (quoting *State v. Harada*, 98 Hawai'i 18, 22, 41 P.3d 174, 178 (2002) (quoting *State v. Wilson*, 92 Hawai'i 45, 48, 987 P.2d 268, 271 (1999))))).

III. *DISCUSSION*

■ In *State v. Smith*, 103 Hawai'i 228, 81 P.3d 408 (2003), we confronted the same issue that the prosecution raises in the present matter, to wit, the applicability of HRS § 706–606.5, *see supra* note 4, versus HRS § 706–622.5, *see supra* note 5. *Id.* at 230–33, 81 P.3d at 410–13. Indeed, the parties now before us have essentially asserted the same arguments that were raised in *Smith*. *Id.* at 233–34, 81 P.3d at 413–14. That being the case, our decision in *Smith* is entirely dispositive of the present matter. *Smith* reasoned as follows:

... HRS § 706–606.5(1) states that the repeat offender statute applies "[n]otwithstanding ... any other law to the con-

trary...." ... Although HRS § 706–622.5 does contain a similar phrase, the language of the first-time drug offender statute, as compared to the foregoing wording of the repeat offender statute, is markedly narrower in scope: "Notwithstanding any penalty or sentencing provision under part IV of chapter 712...." ... Thus, inasmuch as the plain and unambiguous language of HRS § 706–606.5 requires application of the repeat offender statute over "any other law to the contrary," we hold that the circuit court did not err in sentencing Smith as a repeat offender pursuant to HRS § 706–606.5.

*Id.* at 234, 81 P.3d at 414. Moreover, we held that "in all cases in which HRS § 706–606.5 is applicable, including those in which a defendant would otherwise be eligible for probation under HRS § 706–622.5, the circuit courts must sentence defendants pursuant to the provisions of HRS § 706–606.5." *Id.* Thus, given our holding in *Smith*, the circuit court erred in sentencing Walker pursuant to HRS § 706–622.5 instead of applying HRS § 706–606.5.

■ With regard to Act 44, Walker concedes that the amendments to HRS § 706–606.5, "by [their] own terms, do[ ] not directly apply to Walker's case" and that Act 44, part II, §§ 29 and 33 specifically exclude from the purview of the amendments all "rights and duties that matured, penalties that were incurred, and proceedings that were begun, before" July 1, 2004. *See supra* note 5. Put differently, Act 44 expressly states it does *not* apply retroactively. *See* HRS § 1–3 (1993) ("No law has any retrospective operation, unless otherwise expressed or obviously intended."). Pursuant to the plain language of Act 44, therefore, Walker is subject to the provisions of the "Act 161" version of HRS § 706–622.5, and, as we held in *Smith*, HRS § 706–606.5 was the controlling statute.

Nevertheless, Walker maintains as follows:

The 2004 Legislature's specific mention that Act 44's amendments to HRS § 706–622.5 were intended to clarify the very issue in the case at bar: whether the mandatory probation of Act 161 or the mandatory minimum imprisonment of the repeat

offender statute takes precedence in the sentencing of a defendant who is eligible under both statutes, lends support for Defendant–Appellee's argument that the lower court's application of HRS § 706–622.5 was correct, and hence the COLs and [o]rder were likewise proper.

We disagree.

As recited *supra* in note 5, the legislature explained its intended purpose in effecting the foregoing amendments in elaborate detail. Most significantly, the legislature stated as follows: (1) "[t]he Task Force recommended that Act 161 should be amended to ... permit *more discretion* by the court in sentencing"; (2) "the legislature intends that a *broader group* of nonviolent drug offenders will be eligible for consideration for probation in order to undergo drug treatment"; (3) "[t]he *purpose of this amendment is to provide the court with discretion* in sentencing a first-time nonviolent drug offender to probation regardless of whether the offender has prior convictions"; and (4) "[t]he legislature *strongly urges courts to consider* transferring the most severely addicted offenders or addicted offenders with criminal histories to the jurisdiction of the drug court as a condition of being sentenced to probation." 2004 Haw. Sess. L. Act 44, pt. II, § 9 at 212–13 (emphases added); *see supra* note 5. By its plain language, Act 44 prospectively permits *greater* discretion to sentencing courts confronted with conflicts between HRS §§ 706–606.5 and 706–622.5 than they previously possessed. Thus, based on the legislative intent

reflected in Act 44, the "Act 161" version of HRS § 706–622.5, under which Walker was sentenced, did not trump the repeat offender statute. *Cf. In re John Doe, Born on January 5, 1976*, 76 Hawai'i 85, 92 n. 10, 869 P.2d 1304, 1311 n. 10 (1994) (citing *Franks v. City and County of Honolulu*, 74 Haw. 328, 340 n. 6, 843 P.2d 668, 674 n. 6 (1993), for the proposition that "this court has used subsequent legislative history or amendments to confirm its interpretation of an earlier statutory provision").

## IV. CONCLUSION

For the foregoing reasons, we hold that Act 44 does not alter our holding in *Smith* and, therefore, consistent with Act 44, part II, §§ 29 and 33, HRS § 706–606.5 trumps HRS § 706–622.5 with respect to all cases involving "rights and duties that matured, penalties that were incurred, and proceedings that were begun, before [the] effective date [of Act 44]," *i.e.*, July 1, 2004. Accordingly, we (1) vacate the judgment, guilty conviction, probation sentence, and mittimus, filed on December 2, 2003, and (2) remand this matter to the circuit court for resentencing pursuant to this opinion.